## (March 6, 1972)

■ ALBERT BERGENFELD, Appellant, v. MIDAS COLLECTIONS, INC., Respondent, et al., Defendants.— In an action to foreclose a mortgage, plaintiff appeals from so much of a judgment of the Supreme Court, Nassau County, dated July 14, 1971 and made after a nonjury trial, as dismissed its complaint against defendant Midas Collections, Inc. and as limited the foreclosure relief granted therein to the interest of Rhoda Levine in the mortgaged premises. Judgment modified, on the law and the facts, (1) by deleting therefrom the portion of the first decretal paragraph which dismissed the complaint as against defendant Midas Collections, Inc., and substituting therefor a provision that plaintiff have foreclosure and sale against all the defendants and (2) by deleting from the first and third decretal paragraphs thereof the limitation of the foreclosure and sale to the interest of Rhoda Levine in the premises and substituting therefor a provision that the foreclosure and sale be effective against the interest that defendants Nat Levine and Rhoda Levine had or now have in the premises; and as so modified, judgment affirmed insofar as appealed from without costs, with a memorandum by Shapiro, J., in which Christ, J., concurs, and a separate memorandum by Gulotta, J., in which Latham, Acting P. J., concurs. Shapiro, J. Defendant Midas purchased the interest of defendant Nat Levine in the subject premises at a Sheriff's sale in 1969. Midas was, in our opinion, a purchaser for value (cf. CPLR 5203, subd. [a], par. 3). Plaintiff seeks to foreclose a mortgage which secured an indebtedness that was due and payable to him in 1962. Although the mortgage was recorded, it appeared, as of record at the time of the Sheriff's sale, to have been past due for more than six years, thereby providing a defense of the Statute of Limitations to an action seeking to foreclose the mortgage. Midas is not chargeable with notice of an unrecorded extension agreement executed by plaintiff as mortgagee and Nat and Rhoda Levine as mortgagors in 1964. Section 17-105 of the General Obligations Law provides, in pertinent part: "1. A waiver of the expiration of the time limited for commencement of an action to foreclose a mortgage of real property * * * if made after the accrual of a right of action to foreclose the mortgage and made, either with or without consideration, by the express terms of a writing signed by the party to be charged is effective, subject to any conditions expressed in the writing, to make the time limited for commencement of the action run from the date of the waiver or promise. * * * 3. A waiver or promise made as provided in this section is effective a. against (1) the person who made it, to the extent of any interest held by him at the date thereof and (2) any person subsequently acquiring from him any such interest, without giving value or with actual notice of the making of the waiver or promise, to the extent of the interest so acquired; * * * 5. This section does not change the requirements, or the effect with respect to the time limited for commencement of an action, of a. a payment or part payment of the principal or interest secured by the mortgage". The rights of

Midas, as a purchaser of Nat Levine's interest for value and without actual notice of the extension agreement (which was a recordable instrument), were not subject to defeasance by reason of that agreement. The undisputed facts in the record, however, indicate that interest payments were made on account of the mortgage through the latter part of 1966. Unlike the rule with regard to unrecorded extension agreements, such payments, as they were made within the time limited for the commencement of the action, effectively extended the time for the commencement of the action both as to the mortgagors and as to Midas (General Obligations Law, § 17-107). Midas is chargeable with the result which a prudent inquiry would have disclosed as to whether the mortgage debt had been extended by a part payment on account of the indebtedness. If there is to be a change in the differentiation made in the General Obligations Law between the effect of an unrecorded mortgage extension agreement and the effect of part payments on account of a mortgage indebtedness, it must emanate from the Legislature, which has mandated such differentiation. The Legislature, in adopting the predecessor statutes to sections 17-105 and 17-107 of the General Obligations Law was aware of this difference in treatment (see 1961 Report of N. Y. Law Rev. Comm., pp. 114-115; N. Y. Legis. Doc., 1961, No. 65 [F]). Any anomaly in such treatment can be altered only by legislative action and not by judicial alteration of carefully drawn statutes. Gulotta, J. I concur in the result reached, but I disagree with the conclusion expressed in the memorandum by Mr. Justice Shapiro that the mortgage was kept viable solely by virtue of the interest payments and that the unrecorded extension agreement was ineffective against Midas as a matter of law. It is true that some support for this view exists in section 17-105 (subd. 3, par. a) of the General Obligations Law, but I think this must be read in conjunction with section 291 of the Real Property Law, which invalidates an unrecorded conveyance only as against a subsequent purchaser for value who acts in *good faith*. In view of the widespread, almost universal practice, which has been followed in the financial community for generations, especially as to non-amortizing mortgages, to allow mortgages to remain open of record, without recording extension agreements, anyone who *assumes* that every open mortgage which *might be* time-barred, *is* time-barred, without making inquiry, would lack good faith as a matter of fact, if not a matter of law. Therefore, it is not necessary to hold, in contravention of section 17-105, that Midas had constructive notice of the unrecorded extension agreement, but rather that it had notice of the *recorded mortgage* and was under a duty to inquire as to its status to preserve its good faith. In other words, a purchaser makes such an assumption as Midas made in this case at his peril, not only as to part payments, but as to an extension of the debt as well. This point becomes clearer when applied to a simple writing which acknowledges a debt and thus keeps it alive, but which would be insufficient to qualify as a conveyance under section 290 of the Real Property Law and therefore not recordable. For all practical purposes this would be the equivalent of a part payment and should be treated like it, but the memorandum by Mr. Justice Shapiro gives it no effect. In my opinion, the suggestion to the Legislature with respect to the anomalous provisions of sections 17-105 and 17-107 should request that the conflict be resolved by bringing the effect of a new promise into line with that of a part payment, rather than the other way around. To suggest the contrary is to suggest a departure from accepted title practice, followed for many years, and for no apparent reason. [66 Misc 2d 665.]