OPINION OF THE COURT
Fuchsberg, J.
The ultimate issue on this appeal, raising questions touching on sections 17-101, 17-105 and 17-107 of the General Obligations Law, is whether purchasers of an interest in realty, having acquired it for value and with knowledge that the second mortgage indebtedness it secured was in default, but without actual notice that the original owner had made a payment on account of the defaulted indebtedness after the Statute of Limitations had run, may yet avail themselves of the time lapse to bar foreclosure of their acquired interest. We hold they may.
The factual context in which the problem is posed is essentially undisputed. In I960, Herbert Roth and his now deceased wife, Ruth, loaned $11,000 to Ruth’s brother, Herbert J. Michelson, and the latter’s wife, Lillian. To secure the debt, the Roths took back a second mortgage on the Michelsons’ one-family dwelling in Mount Vernon. The mortgage and accompanying bond called for semiannual interest and amortization payments, but only two payments were ever forthcoming, one for $400 in 1961 and a second for $200 12 years later, in 1973. The Michelsons, who have since divorced, separated in 1972, the house continuing to be the wife’s residence. So far as the evidence indicates, the second payment was made by Herbert Michelson on his own.
This was the picture in November, 1975, when Herbert filed an individual petition in bankruptcy. In the schedules filed in that proceeding, he listed the mortgage obligation as a secured debt. At a subsequent public sale conducted at the instance of the trustee in bankruptcy, Carmella and Natale Russo, Lillian’s parents, bid in the property, subject *281 to existing liens, for $500. Lillian Michelson does not deny that she encouraged them to do so. A foreclosure action on behalf of Herbert Roth and his wife’s estate ensued.
The question that emanates is the extent to which the action is barred by the applicable six-year Statute of Limitations (CPLR 213, subd 4), which, given the mortgagor’s failure to make any payment for six years after the $400 payment was made in 1961, by then ordinarily would have run its course. Plaintiffs contend, however, that the 1973 payment caused the limitations period to commence running all over again (General Obligations Law, §§ 17-101, 17-107).
As to Lillian’s interest, both the Trial Judge and the Appellate Division held, and we agree, that foreclosure is unavailable, essentially because, absent proof that she was aware of Herbert’s 1973 payment, she cannot be charged with a revival of the limitations period.[1] However, as to Herbert’s interest, which was conveyed to the Russos after Herbert’s bankruptcy, the courts found that the payment kept the mortgage alive. With this we disagree. Our reasons follow.
It is a long-standing common-law rule that, if part payment of a debt otherwise outlawed by the Statute of Limitations is made under circumstances from which a promise to honor the obligation may be inferred, it will be effective to make the time limited for bringing an action start anew from the time of such payment (see Brooklyn Bank v Barnaby, 197 NY 210; see, also, Morris Demolition Co. v Board of Educ., 40 NY2d 516, 520). The full force of this rule is not diminished or superseded by statutory overlay. For, while section 17-101 of the General Obligations Law provides that, if the promise “by the party to be charged thereby”, even without part payment, is in written form, this alone will take it “out of the operation of the provisions of limitations of time for commencing actions”, it also expressly provides that “[t]his section does not alter the effect of a payment of principal or interest”. It follows that both case law and statute are compatible.
*282 These legal criteria in mind, we observe that the check drawn by Herbert Michelson for the 1973 payment carries the legend “payment against mortgage, 14 Hamilton Avenue”, the latter being the address of the mortgaged premises. In addition, it is uncontested that the check was delivered to the Roths with a note in which Herbert declared it “my hope for the future and my determination to make good ALL of my debts, particularly my debt to you two” (emphasis in the original). That these statements were sufficient to revive plaintiffs’ cause of action against Herbert under either the statutory or common-law rule is self-apparent.
However, to determine whether the revival of the debt carried over to plaintiffs’ right to foreclose the underlying mortgage, the object of the present action, we must turn to section 17-107 of the General Obligations Law, captioned, pertinently for present purposes, “Effect of part payment on time limited for foreclosure of a mortgage”. Under its subdivision 2 (par a, cl [2]), a payment which will revive a debt is also effective to revive the right to foreclose as against both (1) the person who made the payment and (2) a person who subsequently “acquire[s] from him any such interest” in the property “without giving value or with actual notice of the making of the payment” (emphasis added).
Neither the “without giving value” nor the “actual notice” conditions were met here. The Russos gave value for the property, the $500 paid to the trustee in bankruptcy; while plaintiffs characterize this as a “nominal sum”, nothing in the statutory language excludes from its embrace those who happen to have made a bona fide purchase on favorable terms. Nor, standing alone, does the fact that Lillian Michelson occupied the house, or that she is the daughter of the Russos or that these factors may have motivated the Russos to make the purchase qualify these requirements. What is significant is that there is nothing to indicate that the Russos had actual knowledge of the 1973 payment or, for that matter, of the writing with which Herbert Michelson transmitted it to the Roths (see General Obligations Law, § 17-105, subd 3, par a).[2]
*283 To this the Roths counter that the Russos, having purchased the property at a bankruptcy sale, were chargeable with knowledge of the contents of the bankruptcy schedule, which, because it listed the mortgage debt as an open obligation, should have alerted them to the fact that Herbert may have acknowledged its continuing viability for Statute of Limitations purposes. The scheduling of the 1960 mortgage balance, however, did not take the place of the “actual notice of the making of the [1973] payment’ called for by the plain wording of the statute (emphasis added). It was not enough that it could have invited inquiry. After all, a bankrupt, in the effort to wipe the slate clean, may be expected to err on the side of inclusion of every dischargeable item, however uncertain its factual or legal merit may be. And, of course, most decisively, a primary principle of statutory interpretation is that legislative intent, when unobscured by ambiguity or inconsistency, is to be determined by taking the legislative language literally (see People v Graham, 55 NY2d 144, 151, and the authorities cited thereat; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 71, 76).
In sum, the 1973 payment by Herbert Michelson did not extend the Statute of Limitations period as to defendants Russo.[3]
Accordingly, on the appeal by defendants Russo, the order of the Appellate Division should be reversed, with costs to the appellants, and the complaint dismissed. As to the appeal taken by defendant Lillian Michelson, it should be dismissed, without costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
*284 On appeal by defendant Michelson: Appeal dismissed, without costs.
On appeal by defendants Russo: Order reversed, with costs, and complaint dismissed.

. As the action was thus dismissed as to defendant Lillian Michelson, she is not a party aggrieved (CPLR 5511) and her appeal to us must be dismissed as well.

. We note that subdivision 2 of section 17-107 also provides that if the payment *283 reviving the debt is made before expiration of the time limited for the commencement of the action, it is effective against any subsequent purchaser to the extent of the interest that the person who made the payment had at the time without regard to whether such purchaser had notice of the payment or not. But this provision is not applicable here since the 1973 payment was made well after the initial period of limitations had run (compare Bergenfeld v Midas Collections, 38 AD2d 939).

. In view of the result we reach, we find no occasion to treat with whether Herbert Michelson’s 1973 note to the Roths amounted to a waiver under section 17-105 (subd 3, par a), since, in any event, there was no proof that the existence of these writings, by note and by check, had ever come to the attention of the Russos.