**McCOY ASSOCIATES, INC., Plaintiff,**

v.

**NULUX, INC., Defendant.**

**Nulux, Inc., Third–Party Plaintiff,**

v.

**Gene McCoy, Third–Party Defendant.**

**No. 00 CV 3509(ILG).**

United States District Court, E.D. New York.

July 29, 2002.

Jack Dweck, The Dweck Law Firm, LLP, New York City, for Plaintiff.

Martin S. Rapaport, New York City, for Defendant.

## MEMORANDUM & ORDER

GLASSER, District Judge.

This dispute arises out of an oral agreement between plaintiff McCoy Associates, Inc. ("McCoy Associates") and defendant Nulux, Inc. ("Nulux") pursuant to which McCoy Associates agreed to sell certain lighting products manufactured by Nulux in return for commissions. Nulux now moves the Court for an Order, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, granting it judgment on the pleadings. McCoy Associates "cross-moves" for summary judgment on the two claims in its complaint. For the reasons set forth below, the Court construes Nulux's motion as a motion for summary

judgment, grants the motion in part and denies it in part. The Court also grants in part and denies in part McCoy Associates's "cross-motion."

## BACKGROUND

Prior to 1993, McCoy Associates was known as Gemco, Inc. ("Gemco"), and was owned by Gene McCoy ("McCoy"). (*See* Bragdon Aff. ¶¶ 7, 10.) Until 1997, 99.9% of Nulux's shares were owned by its founder, Edison Price ("Price"). (*See id.* ¶ 4.) The other .1% of Nulux's shares were owned by McCoy, who had obtained his shares in return for loaning approximately $315,000 to Nulux. (*See id.* ¶ 5.)[1] McCoy also served on Nulux's board of directors, but Price apparently ran Nulux on his own until his death in the fall of 1997. (*See id.* ¶ 6.)

From approximately 1990 to 1993, Gemco orally contracted with Nulux to sell Nulux lighting products for a sales commission. (*See id.* ¶¶ 7–8.) That contract gave McCoy Associates the right to promote Nulux's products in a specified territory, consisting of Washington, D.C., Maryland, and Virginia. (*See id.* ¶ 8.)[2] McCoy Associates's commissions on the sale of Nulux products ranged from 5% to 10% of the sales price, depending on the location of the purchaser and the location of the purchaser's "specifier," if any.[3]

In 1993, McCoy sold his interest in Gemco to his daughters, who renamed the corporation McCoy Associates. (*See id.* ¶ 10.) McCoy Associates continued to serve as sales representative for Nulux until April 2000. (*See id.* ¶ 10; Compl. ¶ 6.) Nulux alleges that, after selling the corporation to his daughters, McCoy nonetheless continued to maintain control over, and a financial interest in, McCoy Associates. (*See* Bragdon Aff. ¶ 10.)

After Price's death in the fall of 1997, the executor of his estate, Brooks Bragdon ("Bragdon"), agreed to make McCoy the president of Nulux. (*See id.* ¶¶ 11–12.) Bragdon avers that he had no choice but to make McCoy Nulux's president, because if he refused, McCoy "threatened to call in the entire McCoy Promissory Note, which would have forced Nulux out of business." (*Id.* ¶ 12.) Bragdon and Delia Price, one of Price's daughters and the sole beneficiary of his estate under his will, also became directors on Nulux. (*See id.* ¶¶ 11–12.)

According to Bragdon, after becoming President of Nulux, McCoy took numerous steps detrimental to Nulux's interests, but which benefitted McCoy and his daughters. For example, McCoy allegedly gave McCoy Associates a written agreement which memorialized the terms of the prior arrangement between it and Nulux, but which also expanded McCoy Associates's promotion area to include Delaware. (*See id.* ¶ 18.) Because Nulux had a "major" client in Delaware which purchased hundreds of thousands of dollars of lighting equipment each year, this would have entitled McCoy Associates to $30,000 to $40,000 more in commissions per year. (*See id.*) McCoy allegedly took this action without authorization from Nulux's board of directors.

In addition, sometime in 1998, a dispute arose between McCoy Associates and Nulux regarding the amount of commissions McCoy Associates had earned which had not yet been paid by Nulux. Bragdon and

---

1. McCoy also received promissory notes from Nulux in return for his loans to the company.

2. McCoy Associates was not precluded from *selling* Nulux's products outside that area, however.

3. A "specifier" is "a consultant hired by the client to recommend lighting and other purchases." (Bragdon Aff. ¶ 9.)

Delia Price investigated McCoy Associates's claims, and determined that McCoy Associates's demands for commissions "were either inflated, not owed at all, stale, ... already ... paid, or ... insufficiently documented." (Bragdon Aff. ¶ 25.) Without the approval of Nulux's board of directors, however, McCoy, acting as Nulux's president, apparently signed a promissory note in McCoy Associates's favor for $131,000, purportedly representing the past-due commissions owed to McCoy Associates. (*See id.* ¶ 29.) Nulux subsequently performed an audit of its past-due commissions to McCoy Associates, and determined the amount due to be less than $30,000. (*See id.* ¶ 30.)

The overdue commissions form the crux of McCoy Associates's complaint in this case. In July of 2000, McCoy Associates commenced this action against Nulux, alleging that Nulux failed to pay commissions of $145,432.51 to McCoy Associates from its sale of Nulux's lighting products, and thus breached its contract with McCoy Associates. (*See* Compl. ¶ 9.)[4] Furthermore, McCoy Associates alleges that the failure to pay these commissions constitutes a violation of New York Labor Law §§ 191–b and 191–c. McCoy Associates claims that it is entitled to recover double damages, or $290,865.02, for these violations, pursuant to New York Labor Law § 191–c. (*See id.* ¶ 12.) Nulux, in turn, has commenced a third-party action against McCoy, alleging that he breached his fiduciary duties to Nulux by engaging in the "unauthorized" conduct described above.

Nulux now moves for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, dismissing most of McCoy Associates's complaint. As to McCoy Associates's count for breach of contract, Nulux asserts that, to the ex-tent McCoy Associates is seeking commissions earned prior to June of 1994, the claim must be dismissed, because it is barred by the statute of limitations. (*See* Def. Mem. at 8–10.) Nulux next argues that McCoy Associates's claim under New York Labor Law Sections 191–b and 191–c also must be dismissed, because those sections apply only to "sales representatives." According to Nulux, McCoy Associates was not a "sales representative" under New York law, because it did not "solicit business" in New York. (*See id.* at 10–12.)

In response, McCoy Associates opposes Nulux's motion, and "cross-moves" for summary judgment. In opposition to Nulux's motion, McCoy Associates argues that (i) the breach of contract claim is not barred by the statute of limitations, because the arrangement between it and Nulux was a "mutual, open and current account," and (ii) Labor Law Sections 191–b and 191–c apply because it was, in fact, a "sales representative" under New York law. (*See* Pl. Opp. at 6–14.) In support of its "cross-motion," McCoy Associates argues that there is no factual dispute concerning Nulux's failure to pay commissions due and owing to McCoy Associates, and therefore it is entitled to summary judgment on its breach of contract claim. (*See* Pl. Opp. at 14–18.) McCoy Associates also argues that this failure is a *per se* violation of Labor Law Sections 191–b and 191–c, and that summary judgment should therefore be granted on its second claim, as well. (*See id.* at 17–18.)

### DISCUSSION

I. *Nulux's Motion Should be Converted to a Motion for Summary Judgment*

As noted above, Nulux has moved for judgment on the pleadings under Rule

---

4. McCoy Associates nowhere explains the discrepancy between this amount and the amount of the promissory note signed by McCoy.

12(c) of the Federal Rules of Civil Procedure. Nulux, however, has submitted Bragdon's affidavit with its motion, and relies heavily on that affidavit in support of its arguments. As suggested by the name of such a motion, a court analyzing a motion under Rule 12(c) may look only at the "pleadings," *i.e.*, the complaint, the answer, the counterclaims and replies thereto, the third-party complaint, and the answer to the third-party complaint. *See* Fed. R.Civ.P. 7(a) (defining the universe of pleadings allowed). However, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(c). Thus, the Court must decide whether to exclude Bragdon's affidavit and evaluate Nulux's motion under Rule 12(c), or consider the affidavit and evaluate the motion under Rule 56. The Court chooses the latter course.

█ It is appropriate for a court to consider matters outside the pleadings and convert a motion under Rule 12(c) into a motion for summary judgment if the non-moving party "should reasonably have recognized the possibility that the motion might be converted into a motion for summary judgment." *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990) (internal quotation marks and citations omitted). As long as the non-moving party is not "taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings," conversion is proper. *Id.* Here, it is clear that McCoy Associates will not be "taken by surprise" or "deprived of a reasonable opportunity" to respond to Bragdon's affidavit. Indeed, McCoy Associates has "cross-moved" for summary judgment, and has

submitted affidavits and documentary evidence in support of its "cross-motion." Accordingly, McCoy Associates cannot credibly argue that it would be blind-sided if the Court converts Nulux's motion into a motion for summary judgment. For these reasons, the Court will consider Bragdon's affidavit, and will treat Nulux's motion as a motion for summary judgment under Rule 56.

## II. *Standard for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks and citations omitted). In deciding a summary judgment motion, a court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A disputed fact is material only if it might affect the outcome of the suit under the governing law. A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a reasonable jury could return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In assessing the record to determine whether there is a genuine issue of fact, the court is required to draw all inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).

## III. *Nulux's Motion*

### A. *The breach of contract claim is not barred by the statute of limitations*

Nulux first argues that McCoy Associates's breach of contract claim, to the extent it is predicated on commissions due for sales made prior to June of 1994, is barred by New York's six-year statute of limitations for contract actions. (*See* Def. Mem. at 8–10.) McCoy Associates responds that the six-year statute of limitations does not apply, because the arrangement between Nulux and McCoy Associates was a "mutual, open and current account." (*See* Pl. Opp. at 6–10.) Under New York Civil Practice Law and Rules Section 206(d), an action on a "mutual, open and current account" must be brought within six years of "the time of the last transaction in the account on either side." McCoy Associates contends that the last payments made by Nulux for commissions owed to McCoy Associates were in November of 1998, less than six years before McCoy Associates commenced this action. Accordingly, McCoy Associates argues no part of the breach of contract claim is barred by the statute of limitations. (*See id.*)

■ This argument, however, is flawed; indeed, it is clear that McCoy Associates simply misapprehends the nature of a "mutual, open and current account." Such an account exists "only where there is an express or implied agreement between two parties to set off their mutual debts against each other." *Simpson v. Mutual of Omaha Ins. Co.,* No. 97 Civ. 1339, 2000 WL 322780, at *6 (S.D.N.Y. Mar. 28, 2000) (citations omitted). Accordingly, a condition precedent to finding such an account is mutual obligations between two parties. *See, e.g., Green v. Disbrow,* 79 N.Y. 1, 13 (1879) ("to constitute a mutual account of reciprocal demands, a defendant, when sued, must have an account against the plaintiff, which he can interpose as a set-off to the extent thereof"); *Szelega v. O'Hara,* 159 A.D.2d 890, 891, 553 N.Y.S.2d 526, 527 (3d Dep't 1990) ("The claim that there was a mutual or open running account between the corporation and O'Hara is also unsupported by the record, ... since there was no evidence of offsetting claims or mutual debits and credits.") (citations omitted); *Donahue–Halverson, Inc. v. Wissing Constr. & Bldg. Servs. Corp.,* 95 A.D.2d 953, 954, 464 N.Y.S.2d 268, 269 (3d Dep't 1983) (fact that the record was "devoid of any suggestion that there were offsetting claims by defendant against plaintiff ... negate[d] the existence of any mutual, open account"); *see also Rodgers v. Roulette Records, Inc.,* 677 F.Supp. 731, 735 (S.D.N.Y.1988); *Levinson Steel Co. v. Schiavone Constr. Co.,* 637 F.Supp. 164, 167 (S.D.N.Y.1986). McCoy Associates has nowhere suggested that it owed anything to Nulux; accordingly, the arrangement between the two cannot have been a "mutual, open and current account." Thus, Section 206(d) does not save McCoy Associates's claim, to the extent it is predicated on sales made prior to June of 1994.

However, McCoy Associates raises an argument (albeit superficially) which fares better. McCoy Associates asserts that Nulux acknowledged its past-due obligations in a November 3, 1998 letter, and that this acknowledgment reset the statute of limitations "clock." (*See* Pl. Opp. at 8–9.) In the November 3, 1998 letter (attached as Ex. 1 to the affidavit of Jean McCoy), Nulux "confirmed that [it] would be making accelerated payments at the rate of $3,000 a month against the past due commissions." Nulux included a check for $3,000 with the letter, and stated that it "look[ed] forward to reducing and paying off in full the total balance due."

■ McCoy Associates is correct that this letter, and the partial payment included therewith, reset the statute of limita-

tions to begin running anew on November 3, 1998. "It is a long-standing common-law rule that, if part payment of a debt otherwise outlawed by the Statute of Limitations is made under circumstances from which a promise to honor the obligation may be inferred, it will be effective to make the time limited for bringing an action start anew from the time of such payment." *Roth v. Michelson*, 55 N.Y.2d 278, 280, 449 N.Y.S.2d 159, 161, 434 N.E.2d 228 (1982) (citations omitted); *accord Vicki B. v. David H.*, 57 N.Y.2d 427, 429–30, 456 N.Y.S.2d 737, 738, 442 N.E.2d 1248 (1982) ("The part payment of a debt renews the Statute of Limitations because it constitutes a new implied promise to pay.") (citations omitted); *Saljanin v. Vuksanaj*, 284 A.D.2d 525, 526, 727 N.Y.S.2d 145 (2d Dep't 2001) (partial payment on note reset running of statute of limitations); David D. Siegel, New York Practice § 50 (2d ed. 1991 & Supp.1994) ("A written and signed acknowledgment of a debt or other obligation starts the statute of limitations running anew.... Wholly apart from any written acknowledgment, an actual payment made ... under circumstances establishing that it is intended as a part payment towards a larger debt starts the period running anew on the balance."). This is true even for payments made *after* the statute of limitations originally had expired. David D. Siegel, New York Practice § 50 (2d ed. 1991 & Supp. 1994). Accordingly, because Nulux acknowledged its obligation to McCoy Associates on November 3, 1998, and made a partial payment towards its obligation on that date, no part of its breach of contract claim is barred by the six-year statute of limitations.

B. *McCoy Associates was not a "sales representative" under New York law*

■ Nulux next argues that McCoy Associates's claim under Labor Law Sections 191–b and 191–c must be dismissed because there is no evidence suggesting that McCoy Associates "solicit[ed] sales orders" in New York, and thus McCoy Associates was not a "sales representative" under the Labor Law. (*See* Def. Mem. at 10–12.) Nulux is correct, and thus McCoy Associates's second claim must be dismissed.

Labor Law Sections 191–b and 191–c are expressly limited to contracts with "sales representatives." A "sales representative" is defined as "a person or entity who solicits orders in New York state," and who satisfies certain other criteria not relevant here. N.Y. Lab. § 191–a(d) (McKinney 2000). McCoy Associates directs the Court's attention to three facts which, it claims, demonstrate that it "solicits orders" in New York: (1) the fact that it attended sales meetings in New York with Nulux and various Nulux representatives; (2) the fact that it sold lighting products to New York customers; and (3) the fact that Nulux issued business cards, bearing Nulux's New York address, to Jean McCoy and Jane Charney, employees of McCoy Associates. None of these facts is sufficient to demonstrate that McCoy Associates was a "sales representative" under the Labor Law.

First, the fact that various representatives of McCoy Associates attended meetings at Nulux in no way suggests that McCoy Associates was soliciting business in New York. Indeed, there could be numerous reasons why McCoy Associates's representatives might have visited Nulux's office, including meetings concerning the sale of Nulux products to clients outside of New York. In fact, many of the meetings recounted in Jean McCoy's affidavit appear to relate to the sale of products to clients located outside of New York. (*See, e.g.,* McCoy Aff. ¶ 12(f) (describing meeting at Nulux's offices with "John Wood, lighting consultant at Claude Engle Asso-

ciates (Washington, D.C.)")); *id.* ¶ 12(j) (describing meeting at Nulux's offices with "Bruce Kogod of Maurice Electric (Washington, D.C.)".)[5] Thus, the fact that McCoy Associates's representatives traveled to Nulux's office in New York is simply insufficient to show that McCoy Associates solicited business here, *i.e.*, engaged in "effort[s] to gain business" in New York. Black's Law Dictionary 1398 (7th ed.1999).

Second, the fact that McCoy Associates sold products to New York customers does not mean that it solicited business here. Obviously, there is a difference between the solicitation of a sale and the sale itself; it is certainly possible to sell something without soliciting its sale. Thus, the fact that McCoy Associates made a small percentage of its sales to New York customers does not prove that it was soliciting sales in New York. Indeed, as one New York court has stated, the emphasis must be on whether the person "solicited orders from New York[,] and not upon the location of the customers." *Kaye v. Artmatic Corp.*, 214 A.D.2d 473, 474, 625 N.Y.S.2d 216, 217 (1st Dep't 1995). Furthermore, concluding that McCoy Associates solicited sales in this state would be at odds with its contract with Nulux, which permitted it to promote Nulux's products in Washington, D.C., Maryland, and Virginia (and later Delaware). Moreover, under Labor Law Section 191–b, a contract with a "sales representative" for the solicitation of business in New York must be in writing. *See* N.Y. Lab. § 191–b(1). The fact that McCoy Associates did not have a written contract until Gene McCoy became presi-

dent of Nulux suggests that it was not soliciting business in New York.

Third, and finally, the fact that Nulux gave business cards to certain of McCoy Associates's employees does not mean that McCoy Associates solicited business in New York. Indeed, those business cards may have been passed out to persons located anywhere, and did nothing more than show those individuals' association with Nulux and Nulux's products.

All told, there is no evidence from which the Court can conclude that McCoy Associates was a "sales representative" under New York law. Therefore, Nulux's motion is granted with respect to this claim.[6]

## IV. *McCoy Associates's Cross–Motion*

The Court having granted Nulux's motion with respect to McCoy Associates's claim under New York Labor Law Sections 191–b and 191–c, all that remains of the complaint is McCoy Associates's breach of contract claim, which, as noted above, is not barred by the statute of limitations. McCoy Associates asserts that there are no genuine issues of fact regarding this claim, and that it is entitled to judgment in its favor, because it has adequately demonstrated the existence of a contract, its performance thereunder, breach of the contract by Nulux, and resulting damages. (*See* Pl. Opp. at 15–18.) Nulux's sole argument in response is that the damages to which McCoy Associates may be entitled are uncertain, and may not exist at all. (*See* Def. Reply at 13–18.)[7]

█ That McCoy Associates's damages are uncertain, or may not even exist, is an insufficient reason to deny McCoy Associ-

---

5. The other meetings detailed by Jean McCoy do not specify whether they relate to soliciting sales in New York state.

6. As a result, McCoy Associates's "cross-motion" with respect to this claim is denied.

7. Nulux concedes that there was an agreement, and has also conceded that it breached the terms of that agreement. (*See* Pl. Opp. at 15 (noting that Nulux "acknowledges that there may be some monies owed to Plaintiff, but, if there is anything owed, it is less than $30,000.00"); Bragdon Aff. ¶ 31.)

ates's summary judgment motion. New York courts[8] have long held that uncertainty in the amount of loss caused by a breach of contract, or even the complete absence of damages resulting from the breach, does not defeat a breach of contract claim. As one court has stated, "it is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of loss cannot be proved with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any." *Hirsch Elec. Co. v. Cmty. Servs., Inc.*, 145 A.D.2d 603, 605, 536 N.Y.S.2d 141, 143 (2d Dep't 1988) (citation omitted); *accord Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 384, 357 N.Y.S.2d 857, 861, 314 N.E.2d 419 (1974) (plaintiff entitled to nominal damages where compensatory damages not proven with certainty; "Though these are damages in name only and not at all compensatory, they are nevertheless awarded as a formal vindication of plaintiff's legal right to compensation which has not been given a sufficiently certain monetary valuation."); *Manhattan Sav. Inst. v. Gottfried Baking Co.*, 286 N.Y. 398, 400, 36 N.E.2d 637 (1941) (same); *C.K.S. Ice Cream Co. v. Frusen Gladje Franchise, Inc.*, 172 A.D.2d 206, 208, 567 N.Y.S.2d 716, 718 (1st Dep't 1991) ("Even if it were shown that no actual damages

have been sustained, plaintiff would seem entitled to proceed to trial at least on its contract cause of action[,] if only to vindicate its right to nominal damages.") (citations omitted); *Good Karma Prods. v. Penthouse Int'l, Ltd.*, 88 A.D.2d 561, 450 N.Y.S.2d 486, 486–87 (1st Dep't 1982); *see also Vazquez v. Salomon Smith Barney Inc.*, No. 01 CIV 2895, 2002 WL 10493, at *6 (S.D.N.Y. Jan. 4, 2002) (lack of damage did not defeat breach of contract claim); *Mermaid Neptune Dev. Corp. v. Home Owners Warranty Corp.*, No. 85 CIV 6318, 1988 WL 45653, at *4 (S.D.N.Y. May 4, 1988) (same); *UV Indus., Inc. v. Sharon Steel Corp.*, 631 F.Supp. 1219, 1221 (S.D.N.Y.1986) (same). This is because "[w]henever there is a breach of a contract or the invasion of a legal right[,] the law infers some damage." *Finley v. Atlantic Transp. Co.*, 220 N.Y. 249, 258, 115 N.E. 715 (1917). Accordingly, summary judgment should be granted where, as here, the existence of a contract and its breach have been established, regardless of the certainty of damages. *See, e.g., C.K.S. Ice Cream*, 172 A.D.2d at 208, 567 N.Y.S.2d at 718; *Hirsch Elec. Co.*, 145 A.D.2d at 605, 536 N.Y.S.2d at 143; *Northway Mall Assocs. v. Bernlee Realty Corp.*, 90 A.D.2d 739, 739–40, 455 N.Y.S.2d 684, 685 (1st Dep't 1982). The issue of damages should be referred to Magistrate Judge Chrein for an inquest.[9]

8. The parties have not addressed whether any other state's law governs McCoy Associate's breach of contract claim, and each simply assumes that New York law applies. This is a sufficient reason for the Court to apply New York law. *See, e.g., Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 n. 5 (2d Cir.1998); *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 203 n. 7 (2d Cir.1998).

9. One point bears mentioning. The fact that McCoy Associates may only have a claim for nominal damages implicates the Court's subject-matter jurisdiction, because this is a diversity case requiring the "matter in controversy" to exceed $75,000. 28 U.S.C.

§ 1332(a). The Court need not linger on this issue for long, however. For the Court to determine that it lacks subject-matter jurisdiction over this action, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *accord* 15 James Wm. Moore et al., Moore's Federal Practice § 102.106[1] (3d ed.2000). In making this assessment, the Court "must limit its review to the allegations in the complaint, and must refrain from considering and adjudicating defenses asserted on the merits." *Snyder v. Madera Broad., Inc.*, 872 F.Supp. 1191, 1198 (E.D.N.Y.1995)

## CONCLUSION

For the reasons set forth above, the Court construes Nulux's motion as a motion for summary judgment, and grants the motion in part and denies it in part. Specifically, the Court grants Nulux's motion with respect to McCoy Associates's claim under New York Labor Law Sections 191–b and 191–c, and dismisses that claim. The Court denies the motion insofar as Nulux argues that some portion of McCoy Associates's breach of contract claim is barred by the statute of limitations. The Court also grants in part and denies in part McCoy Associates's "cross-motion." Specifically, that motion is denied vis-a-vis the Labor Law claim, and granted with respect to Nulux's liability on the breach of contract claim. Finally, the issue of McCoy Associates's damages on its breach of contract claim is referred to Magistrate Judge Chrein for an inquest.

SO ORDERED.

(internal citations omitted). The mere fact that McCoy Associates may not recover the minimum jurisdictional amount does not oust the Court of jurisdiction. *St. Paul,* 303 U.S. at 289, 58 S.Ct. 586. Nor does the fact that McCoy Associates's damages are uncertain; where, as here, the recovery of damages is uncertain, "the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 785 (2d Cir.1994). As there is some uncertainty concerning the amount of damages McCoy Associates can recover, and because McCoy Associates alleges in its complaint that it is entitled to $145,432.51 on its breach of contract claim, subject-matter jurisdiction poses no concern. *Id.*