**David AHARONI, Plaintiff,**

v.

**Mordakhy BASALAL, a/k/a Mordakhy Basalel, Defendant.**

**No. 06 Civ.1947(JSR).**

United States District Court, S.D. New York.

July 24, 2007.

Rohit Sabharwal, Sabharwal & Associates, New York City, for Plaintiff.

Karyn Rodrigues, Toback, Hyman, Bernstein & Reiss, LLP, New York City, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

RAKOFF, District Judge.

In this diversity action, plaintiff David Aharoni seeks repayment of an interest-bearing loan allegedly made to defendant Mordakhy Basalal. The parties here are part of a close-knit orthodox Jewish community that, until forced to emigrate, re- sided in Afghanistan. Many of its members, including Aharoni and Basalal, were in the jewelry business. As the three day bench trial before the Court disclosed, most of the financial dealings between the members of this community are conducted verbally, with the oral commitments enforced by community pressure and, in certain instances, by rabbinical courts. *See* trial transcript ("tr."), 12/5/2007, at 18–19. An interest-bearing loan, however, is not one normally recognized by the mores of this community, and plaintiff seeks enforcement of the bargain in the secular courts. But the law of New York, which the parties agree here governs, *see* Joint Pre–Trial Consent Order ("PTCO") at 7–9, requires more in the way of a writing, and more in the way of an evidentiary showing, than plaintiff is able to provide.

Specifically, on the basis of the trial testimony and the parties' submissions, the Court makes the following findings of fact and conclusions of law:

On or about July 15, 1998, Aharoni, who by that time had moved from Afghanistan to Israel, wire transferred $110,000 to Basalal's bank account in New York, where Basalal's family, after leaving Afghanistan, had come to reside. *See* PTCO at 1; tr., 2/5/07, at 5; *id.* at 23–24. Aharoni alleges that the transfer was originally intended to be a short-term loan bearing no interest and payable in three or four months. *See* PTCO at 3; tr., 2/5/07, at 24–25; *id.* at 32–33. But when, after years of delay by Basalal, Aharoni became more insistent on repayment, the parties, according to Aharoni, orally agreed in 2004 that the loan would bear interest in the event Basalal failed to repay the principal within six months. *See* tr., 2/5/07, at 38–39.

Basalal, for his part, contends that the wire transfer was never a loan, but a "gift" of sorts, paid to him in connection with his work at Youni Gems Corporation ("Youni

Gems"), the business of Aharoni's brother, Younatan ("Jonathan") Aharoni. *See* PTCO at 2; tr., 2/8/07, at 167–69. He further denies that any agreement was ever made to repay any of the funds, with or without interest. *See* PTCO at 8–9; tr., 2/8/07, at 176. Both parties agree, however, that neither of them made any contemporaneous writing memorializing the nature of the transaction. *See* tr., 2/5/07, at 18–20; tr., 2/8/07, at 147–150.

In resolving this dispute, the Court finds, first, that Basalal's claim that the transfer was a "gift" is totally implausible. Even on Basalal's testimony, it was really a form of income or other compensation, made for the purpose of enticing him to remain in the employ of Youni Gems, where he began work as an apprentice in 1994. Tr., 2/8/07, at 129; *id.* at 169–170. Of course, Basalal could not admit it was income given his total failure to include it in his income tax returns, *see* PTCO at 1, and he therefore testified it was a "gift"— testimony the Court rejects as false. *See* tr., 2/8/07, at 169–70. But even the notion that it was disguised compensation does not wash. The amount of the payment hugely exceeded Basalal's annual salary of $10,000, yet no conditions were attached requiring any further services from him, and, indeed, he left Youni Gems less than two years later and was replaced by a new hire also paid around $10,000 per year. *See* tr., 2/8/07, at 168–171; tr., 2/7/07, at *103–*104.[1] Finally, Basalal's testimony in general, the Court finds, was inconsistent and vague as to numerous details, and his demeanor defensive and, at times, even devious. The Court finds Basalal, and his

testimony, completely untrustworthy and incredible.

While Aharoni's testimony has its own shortcomings, discussed, *infra,* the Court finds that it is more likely than not that the transfer of the $110,000 in 1998 was, as Aharoni testified, initially intended to be a short-term loan without interest. The money, as Aharoni understood it, was needed by Basalal to purchase a home in Queens, and indeed, this was what it was used for. Tr., 2/5/07, at 8–9; tr., 2/8/07, at 171–73. In the world of unwritten agreements in which the parties here operated, Basalal's purchase of a home give Aharoni some reassurance of repayment. Moreover, the Court credits Aharoni's testimony that he was told by Basalal that Basalal was about to come into an inheritance that would enable him to repay the loan in short order. Tr., 2/5/07, at 27. While years passed without repayment, one can well believe that Aharoni would hesitate before bringing a law suit in these circumstances. Nonetheless, the delay, and even more so, the failure to record any of this in writing, is fatal to Aharoni's claims in this case.

■ To the extent Aharoni's claims for breach of contract and promissory estoppel are premised on a 1998 loan carrying a term of repayment of three or four months, they are barred by New York's six-year statute of limitations.[2] *See* N.Y. C.P.L.R. § 213; *see also Roth v. Michelson,* 55 N.Y.2d 278, 449 N.Y.S.2d 159, 434 N.E.2d 228 (1982); *Schmidt v. McKay,* 555 F.2d 30, 36 (2d Cir.1977). At trial, Aharoni attempted to avoid this problem by testifying that in 2004 he had a phone conver-

---

1. Because the latter half of the testimony taken February 7, 2007 was transcribed from an audio recording, that day's trial transcript was produced in two volumes, resulting in inconsistent pagination. The Court will use star pagination to refer to pages in the volume that was made from the recording.

2. Plaintiff has seemingly abandoned his other claim for conversion, *see* PTCO at 8–9, which would, in any case, be barred by a three-year statute of limitations. Accordingly, that claim is hereby dismissed with prejudice.

sation with Basalal in which they agreed that unless Basalal repaid the loan within six months, the balance of the debt would begin accruing interest. *See* tr., 2/5/07, at 39–40. This modification, Aharoni argues, resets the clock for purposes of the statute of limitations.

■ Even if the Court were to credit this testimony, Aharoni's claim would still fail as a matter of law. For even though "[a]t common law, an acknowledgment or promise to perform a previously defaulted contract obligation was effectual, whether oral or in writing, at least in certain types of cases, to start the Statute of Limitations running anew ... since 1848 that rule has been qualified by statute in [New York] State to the extent of requiring the acknowledgment or new promise to be in a writing, signed by the party to be charged." *Lew Morris Demolition Co. v. Bd. of Ed.*, 40 N.Y.2d 516, 521, 387 N.Y.S.2d 409, 355 N.E.2d 369 (1976). Under the relevant section of New York's General Obligations Law (which neither side brought to the Court's attention):

> An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.

N.Y. Gen. Oblig. Law § 17–101. Accordingly, "a signed writing is necessary to stop the limitations clock on a breach of contract claim." *Reznor v. J. Artist Mgmt.*, 365 F.Supp.2d 565, 578 (S.D.N.Y. 2005) (citation omitted). *See also Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir.2007) ("An acknowledgment or promise to perform a previously defaulted contract must be in writing to re-start the statute of limitations."). Here, no such writing exists.

Independently, however, the Court does not, in any event, credit Aharoni's testimony—vehemently contested by Basalal— that the alleged modified agreement was in fact made. *See* tr., 2/8/07, at 176. Aharoni's entire testimony regarding the terms of the modified agreement was extraordinarily vague, and his demeanor on this point correspondingly shaky. For example, although Aharoni testified the modified agreement provided for interest to be paid (despite the prohibition of such interest in Aharoni's community) if the underlying principal was not repaid in six months, he was unable to state what rate of interest the parties had agreed to or explain why he did not actually assess interest six months later when Basalal defaulted. *See* tr., 2/5/07, at 39–41. More generally, Aharoni's testimony on this score seems little more than an artifice designed to avoid the problem of the statute of limitations (as he understood it, since he and his counsel were clearly unaware of the further problems presented by § 17–101, *supra*). The Court therefore rejects Aharoni's testimony as to the alleged modified agreement, finding it not credible.

For the foregoing reasons, the Complaint is hereby dismissed with prejudice. Clerk to enter judgment.

SO ORDERED.