*377 OPINION OF THE COURT
Carmen R. Velasquez, J.
A bench trial was held before this court on August 19, 2011 in this action by the plaintiff to recover no-fault benefits for chiropractic services provided to Dana Schepanski. At the trial, Dr. Daniel Sposta, D.C., testified on behalf of the defendant and the plaintiff, Dr. John Kraft, D.C., testified on his own behalf. The parties also stipulated to the admission of the peer review report and underlying medical documents. After reviewing and assessing all of the evidence, including the testimony of the witnesses and the exhibits introduced by the parties, the court renders the following decision:
Plaintiff, Dr. John Kraft, D.C., as assignee of Dana Schepanski, seeks payment for chiropractic services, consisting of manipulation under anesthesia of the spine and hips, provided on July 28, 2009. At trial the parties stipulated to plaintiffs prima facie case of no-fault entitlement and to the timeliness and propriety of defendant’s denial of the claims that are the basis of this action. The parties further stipulated that the sole issue to be determined by this court was the medical necessity of the chiropractic manipulation under anesthesia (MUA) performed by plaintiff.
Plaintiffs assignor, Dana Schepanski, had been involved in a motor vehicle accident on October 28, 2008, which left her with headaches, neck pain radiating to the shoulders and lower back pain radiating to the left buttocks and hip region. After several months of chiropractic care, physical therapy and pain medication, assignor’s progress had plateaued. Medical progress notes dated from November 2008 to January 2009 consistently denoted her functional status as no greater than fair with continuing pain, spasms and tightness. On January 28, 2009, plaintiff, as co-surgeon, performed five manipulations of the assignor’s spine and hip joints while she was under anesthesia. On March 27, 2009, defendant, State Farm Mutual Automobile Ins. Co., denied payment of all services rendered by plaintiff on January 28, 2009.
Although the parties stipulated that the only issue before this court was the medical necessity of the disputed services, the defendant, both at trial and in the explanation of review, contended that an MUA performed on the hip joint is outside the scope of chiropractic service. Also raised, tangentially, was the frequently encountered contention that a chiropractor is not authorized to perform MUA procedures.
*378 Whether manipulation under anesthesia is a procedure exceeding the scope of lawful chiropractic service is not an issue of first impression for this court. In an unpublished decision, dated July 23, 2010, this court found that chiropractors were authorized to perform manipulations of the spine under anesthesia and awarded judgment to the chiropractor who performed the manipulations and to the chiropractor who assisted him (Lezamiz v Nationwide Mut. Ins. Co., index No. CV-021277/08; Palumbo v Nationwide Mut. Ins. Co., index No. CV-035624/08). The New York State Workers’ Compensation Board, which supplies the fee structure by which the procedures at issue are to be compensated, has also consistently authorized chiropractors to perform manipulations under anesthesia (Employer: Solomon Schecter Day School, 2006 WL 3889159, 2006 NY Wrk Comp LEXIS 11146 [WCB No. 2040 8277]; Employer: Eckerd Drugs, 2008 WL 922458, 2008 NY Wrk Comp LEXIS 2647 [WCB No. 4060 1307]; Employer: Aramak, 2009 WL 456874, 2009 NY Wrk Comp 535411 [WCB No. 0053 5411]; see also John Giugliano, DC, P.C. v Merchants Mut. Ins. Co., 29 Misc 3d 367 [Civ Ct, Kings County 2010]).
The relevant statute, Education Law § 6551 (1), provides that
“The practice of the profession of chiropractic is defined as detecting and correcting by manual or mechanical means structural imbalance, distortion, or subluxations in the human body for the purpose of removing nerve interference and the effects thereof, where such interference is the result of or related to distortion, misalignment or subluxation of or in the vertebral column.”
In light of its unambiguous language, the statute must be given its literal meaning (see Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d 410, 418 [1995]; Roth v Michelson, 55 NY2d 278, 283 [1982]). Nothing in the language of this statute, which defines chiropractic practice, suggests that lawful manipulations performed by chiropractors on conscious patients become unlawful once those patients are sedated. However, another subdivision of the Education Law provides that the holder of a chiropractic license is not permitted “to prescribe, administer, dispense or use in his practice drugs or medicines.” (Education Law § 6551 [3].) Nevertheless, as the State Education Department has acknowledged in a letter dated September 18, 2007, the Education Law does not prohibit a chiropractor from *379 performing spinal manipulations on patients who are under anesthesia, although the chiropractor cannot administer the anesthesia. Therefore, manipulation under anesthesia is within the lawful scope of chiropractic services provided that, as in this case, the anesthesia utilized for the procedure is administered by a licensed professional and not by the chiropractor.
Defendant’s claim that Education Law § 6551 (1) does not permit the holder of a chiropractic license to treat a hip joint lacks merit. The statute limits the purpose of chiropractic treatment but not its scope. It allows treatment of the “human body,” without qualifying the term “human body” so as to preclude treatment of a particular part thereof. The only requirement is that the purpose of treatment be the removal of nerve interference and its effects resulting from or related to “distortion, misalignment or subluxation of or in the vertebral column.” Thus chiropractors licensed in the State of New York may treat any part of the human body, including the hip joint, provided that treatment is for the purpose stated in Education Law § 6551 (1). In fact, the New York State Workers’ Compensation Board has specifically authorized a chiropractor to perform manipulation of the bilateral hip areas under anesthesia, when the stated purpose was to break up fibrous adhesions and scar tissue that had formed on and around the claimant’s spinal column (Employer: Aramak, 2009 WL 456874, 2009 NY Wrk Comp 535411).
The defendant does not contend and has introduced no evidence that the MUA of the hip joints conducted on plaintiff’s assignor was for a purpose other than alleviating nerve interference related to the vertebral column. The medical records of plaintiffs assignor indicate she had back pain, which radiated to the hip area, and the diagnosis codes in the explanation of review include closed dislocation of the sacrum. The sacrum is the segment of the vertebral column that articulates the hip bone on either side (Stedman’s Medical Dictionary [26th ed], sacrum at 1566). Therefore, based on the trial evidence, the court finds that the MUA of the hip joints performed by the plaintiff was related to the vertebral column and within the scope of lawful chiropractic practice as defined in the Education Law.
In support of the lack of medical necessity defense, defendant’s witness, Dr. Sposta, testified that plaintiff failed to meet three requirements: (1) chiropractic patients must seek a second opinion before undergoing an MUA procedure; (2) a chiropractor co-surgeon prior to performing an MUA must review the *380 patient’s medical records; (3) pursuant to protocols established by the National Academy of MUA Physicians (NAMUA), MUA is only appropriate where conventional manipulation could not be performed due to pain, apprehension, muscle contraction or muscle splinting.
Dr. Sposta cited no authority to support his contention that a second opinion is necessary before an MUA procedure is performed on a chiropractic patient. As Dr. Kraft testified, the New York State Workers’ Compensation Board medical treatment guidelines contain no such requirement. As for plaintiffs alleged failure to personally review the patient’s medical records prior to the MUA, even if established it would be insufficient, on its own, to rebut the presumption of medical necessity. Finally, while there is no evidence that plaintiffs assignor was incapable of withstanding conventional manipulation, NAMUA protocol does not limit the availability of the MUA procedure to this criteria. As per NAMUA, patients whose conditions justify MUA include those “whereby manipulation of the spine or other articulations is the treatment of choice, however, due to the extent of the injury mechanism, conservative manipulation has been minimally effective in 2-6 weeks of care and a greater degree of movement of the affected joint(s) is needed.” (NAMUA National Guidelines http://www.namuap.org/ ra.cm.slmualcontent.cfm ?pulldata=scmscontent.cfm & entity_id=8&content_id=180 [accessed Sept. 15, 2011].) The assignor’s treatment prior to the MUA in this case well exceeded such minimum. Her medical records reveal that she was not a surgical candidate and had received several months of conservative care with little to no improvement, thereby justifying the MUA procedures performed by plaintiff.
The court finds that the plaintiff, as a licensed chiropractor, was authorized to perform the disputed manipulations under anesthesia and that the defendant has failed to rebut the presumption of medical necessity of these procedures by a fair preponderance of the credible evidence. Accordingly, verdict in favor of the plaintiff, Dr. John Kraft, D.C., in the amount of $1,594.10 (the agreed disputed amount) with statutory interest, attorney fees, costs and disbursements.